# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

DIANE JOHNSON,     )
            )
    **Plaintiff,**    )
**v.**           )   **No. 07-2665-STA-dkv**
            )
**JOHN E. POTTER,**    )
**in his official capacity as**  )
**Postmaster General,**    )
            )
    **Defendant.**   )

_____

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Defendant John E. Potter's Motion for Summary Judgment (D.E. # 24) filed on December 16, 2008. Plaintiff filed a Response in opposition (D.E. # 30) on January 28, 2009. For the reasons set forth below, the Motion is **GRANTED IN PART, and DENIED IN PART**.

## BACKGROUND

Plaintiff alleges in her Complaint that her employer, the United States Postal Service ("Defendant"), engaged in unlawful retaliation against her pursuant to Title VII of the Civil Rights Act of 1964 and Section 1981a. The following facts are not in dispute. Plaintiff is an Inspection Service Operations Technician at the Security Investigations Service Center in Memphis, Tennessee. Def.'s Statement of Undisputed Facts ¶ 1. Prior to July 18, 2005, Plaintiff had filed three separate EEO complaints with the USPS EEO office, the most recent being on

June 23, 2000.  *Id*. at ¶¶ 2-4.

Plaintiff's first count of retaliation stems from two meetings that took place on July 18, 2005. Plaintiff had gone to the Southeast Area Safety Office, which is located in her building, in order to obtain Office of Workers Compensation Program ("OWCP") forms.  *Id*. at ¶ 6.  Plaintiff stated that she needed the forms because her physician had referred her to a psychiatrist and she wanted the forms in case the psychiatrist diagnosed her condition as job-related.  *Id*. at ¶ 7. Plaintiff obtained the forms from Bob Noonan ("Noonan"), the Southeast Area Safety Manager. *Id*. at ¶ 8.  Plaintiff discussed with Noonan some past problems she had experienced with Lewistine Brooks ("Brooks"), the Manager of the Security Investigations Service Center ("SISC").  *Id*. at ¶ 9.  Plaintiff came to be in tears while discussing these problems with Noonan and told Noonan that she was experiencing stress.  *Id*. at ¶ 10.  While Plaintiff contends that most of her report to Noonan concerned her problems with Brooks, it is also undisputed that Plaintiff reported several other workplace incidents going back many years.  *Id*. at ¶ 11; Johnson Aff. ¶ 10.  Noonan informed Plaintiff that he would speak with Brooks about Plaintiff's allegations. Def.'s Statement of Undisputed Facts ¶ 14.

That same day, Brooks met with Plaintiff to discuss the situation and produced an undated memorandum to document the meeting.  Def.'s Mot. Summ. J., ex. 40.[1]  In her memorandum, Brooks records that she received a telephone call from Noonan around 12:30 P.M. on July 18, 2005.  *Id*.  Noonan forwarded to Brooks a list of problems which Plaintiff had reported to Noonan as the sources of her work-related stress: "hostile work environment, sexual

---

[1] The memorandum reflects that Brooks met with Plaintiff on July 18, 2005.  The memorandum also refers to the meeting as occurring "yesterday."  It appears to the Court then that the memorandum was generated the day after the meeting on July 19, 2005.

harassment..., [a co-worker] called her a dumb bitch, [a second co-worker] curses her and calls her names, she had been accused of stealing from the safe, she has been blocked in her cubicle, management is in it together." *Id.* When Brooks met with Plaintiff to discuss the allegations, Plaintiff elaborated on each area. Plaintiff explained that "management is in it together" referred to the fact that Plaintiff was not given the same job responsibilities as her peers within the same job grade of EAS-11. *Id.* Brooks explains in her memorandum that when "ISIIS came on board," management determined that Plaintiff would not learn all of the new process but instead would be responsible for doing all of the intake for her team. *Id.*[2] With respect to Plaintiff's report of a hostile work environment, Plaintiff told Brooks she had experienced problems with a particular co-worker. *Id.* Brooks informed Plaintiff that Brooks was told the incident was resolved. However, Plaintiff responded that "as far as she was concerned it never should have happened and could never be resolved." *Id.* The sexual harassment Plaintiff reported had occurred in 1994, and so Brooks informed Plaintiff that there was nothing she could do about something that happened in 1994. *Id.* Concerning the co-worker who referred to Plaintiff as "dumb," Plaintiff told Brooks that the incident was related to the transition to the new ISIIS process for which Plaintiff did not receive training. *Id.* Plaintiff also reported that the same co-worker had insulted her in 1990. *Id.* The other incident involved a co-worker cursing at Plaintiff in 1994. *Id.* Finally, Plaintiff complained that a co-worker had intentionally blocked her in her cubicle at some point in the past before Brooks had become manager at SISC. *Id.*

---

[2] The record does not indicate what ISIIS is or how it altered the responsibilities of the employees in Plaintiff's position. However, it is clear and undisputed that whatever the new process entailed, Plaintiff was not trained to perform the same duties as other EAS-11 employees.

Plaintiff indicated to Brooks that all of these episodes were "bottled up inside" of her causing her to lose sleep. *Id*. When Brooks suggested that Plaintiff seek help, Plaintiff reported that she planned to see a psychiatrist. *Id*. Plaintiff believed that her co-workers viewed her as stupid and unable to perform her job. *Id*. Plaintiff believed that co-workers perpetuated this view of her by speaking to new employees about her before the new employees had the opportunity to get to know her. *Id*. As a result of the meeting with Brooks, Plaintiff requested that she be allowed to perform all of the same duties as the other EAS-11 technicians and receive six months training. *Id*. Brooks responded that Plaintiff would be given the same responsibilities and the proper training; however, Plaintiff would receive two weeks of training like all other EAS-11 technicians, not six months. *Id*.

Brooks included with her memo an addendum which she styled a "personal note." *Id*. In her addendum, Brooks reported that she believed Plaintiff had received treatment in the past over some of the same issues raised in their meeting. *Id*. Brooks acknowledged that Plaintiff had filed EEOs concerning some of the incidents discussed during their meeting. *Id*. Brooks expressed concern over Plaintiff's ability to perform her job duties and asked whether a "fitness for duty" would be appropriate. *Id*. Brooks opined that the additional job duties she discussed with Plaintiff would only increase Plaintiff's job stress. *Id*.

While Plaintiff does not deny the meetings with Noonan or Brooks or that she discussed some of the past events during those meetings, Plaintiff insists that the thrust of her complaints concerned Brooks herself. Johnson Aff. ¶¶ 10, 13. According to Plaintiff, Brooks used promotions, training, and job assignments to reward her favorite employees and punish others. Johnson Aff. ¶ 13. Plaintiff complains that she "was on the outs with Brooks and being treated

harshly and overlooked." *Id*. Plaintiff also contends that Brooks's memo was incomplete in so far as it omitted any mention of her allegations against Brooks herself. *Id*. Otherwise, Plaintiff does not dispute the content or the outcome of her meeting with Brooks as recorded in Brooks's memorandum.

On August 9, 2005, Plaintiff sent William Brown, the Vice President of Southeast Area, a letter requesting his assistance with her alleged hostile work environment. Def.'s Statement of Undisputed Facts ¶ 15. Plaintiff also sent copies of the letter to Leonard Brown, the Southeast Area Manager of Human Resources; Edgar Brown, the Manager of Human Resources of the Inspection Service; Brooks; Marvel Hamadeh, one of Plaintiff's other managers; and Marsha Whittington, her immediate supervisor. *Id*. at ¶ 16.

On August 16, 2005, Brooks handed Plaintiff a letter notifying her to submit to a mandatory psychiatric evaluation known as a fitness for duty examination ("FFDE") on August 25, 2005. *Id*. at ¶ 17. The letter advised Plaintiff that the Inspection Service had become aware that she might be experiencing a psychological disorder which could adversely affect her ability to perform her duties in a safe and competent manner. *Id*. at ¶ 18. Brooks was aware of the Plaintiff's EEO complaints filed five years prior but was not aware of being identified as an alleged discriminating official in any of the prior complaints. *Id*. at ¶ 19. Moreover, Brooks did not make the decision to send Plaintiff to a fitness for duty examination unilaterally. *Id*. at ¶ 20.[3] Brooks forwarded the memorandum of her meeting with Plaintiff to the Inspection Service Human Resources Office ("Human Resources") in Washington, D.C. *Id*. at ¶ 22. At that point,

_____

[3] Plaintiff does allege that Brooks threatened Plaintiff with losing her job soon after their meeting. Johnson Aff. ¶ 17.

Human Resources sent the memorandum to Dr. Ibrahim Farid, Associate Medical Office for the Postal Inspection Service ("Dr. Farid"). *Id.* at ¶ 23. Dr. Farid made the determination to send Plaintiff for the FFDE. *Id.* Dr. Farid was unaware of Plaintiff's prior EEO activities. *Id.* at ¶ 24. Dr. Farid's decision to send Plaintiff for the FFDE was based on Management Instruction EL-860-2000-7. *Id.* at ¶ 25.[4] The letter itself was a form letter drafted by Human Resources and was only signed by Brooks. *Id.* at ¶ 26.

Plaintiff subsequently filed an OWCP claim on August 19, 2005. *Id.* at ¶ 27. On August 22, 2005, Pamela Dixon, acting manager of Safety and Health Assessment ("Dixon"), received a medical document that stated that Plaintiff was under a doctor's care from August 19, 2005 through September 15, 2005. *Id.* at ¶ 28. The documentation indicated that Plaintiff's condition could be a qualifying serious health condition under the Family and Medical Leave Act ("FMLA"). *Id.* at ¶ 29. Per USPS procedures, Plaintiff could not be required to undergo a FFDE while on FMLA leave. *Id.* at ¶ 30. Therefore, Dixon made the decision to cancel Plaintiff's scheduled FFDE. *Id.* at ¶ 31. According to Defendant, Brooks cancelled the appointment for the FFDE and notified Plaintiff by telephone and letter. *Id.* at ¶ 32.

Dixon received Plaintiff's medical paperwork indicating that Plaintiff could return to work on November 1, 2005 without restrictions. *Id.* at ¶ 33. Plaintiff did in fact return to work on November 1, 2005. *Id.* at ¶ 34. All of Plaintiff's medical paperwork received by Defendant since the cancellation of her FFDE was then forwarded to Dr. Farid for further review. *Id.* at ¶

---

[4] Plaintiff states that Dr. Farid's determination was based upon the Noonan incident. Johnson Aff. ¶ 17. However, the Court fails to see how this is a disputed fact. It is clear from Defendant's Statement of Undisputed Facts that Dr. Farid was responding to the Noonan incident. The management instruction in question simply provided the guidelines for when an FFDE was appropriate.

35. Dr. Farid determined that a FFDE was still required. *Id.* Brooks issued a letter to Plaintiff on November 12, 2005, directing Plaintiff to see Dr. Michael Patterson ("Dr. Patterson") on December 12, 2005. *Id.* at ¶¶ 36-37.[5] Based on Defendant's decision to order her to undergo the FFDE, Plaintiff filed an EEO complaint with the Defendant's EEO Office under case number 66-000-0056-05 alleging retaliation on October 8, 2005. *Id.* at ¶ 5.

Plaintiff's second count of retaliation arises from a meeting between Plaintiff and her managers on March 9, 2006. *Id.* at ¶ 38. Plaintiff had received her annual Pay for Performance evaluation in January 2006. *Id.* at ¶ 39. Plaintiff was dissatisfied with her rating and was notified that she had until the end of February to appeal it. *Id.* at ¶¶ 40-41. Plaintiff was given instructions on how to file her appeal but did not follow the instructions. *Id.* at ¶ 42. According to Plaintiff, Brooks threatened to block her appeal and never gave Plaintiff instructions on the proper procedure. Johnson Aff. ¶ 30. Plaintiff also claims that Brooks took some of the documents attached to Plaintiff's appeal of the performance review, ripped them in half, and said, "These will never get there." *Id.* at ¶ 33. Plaintiff did deliver to one of her supervisors an appeal, which consisted of her rating and additional documentation. Def.'s Statement of Undisputed Facts ¶ 43.[6] Brooks and one of Plaintiff's supervisors each reviewed the appeal and affirmed the original rating. *Id.* at ¶ 44.

Plaintiff's appeal was next sent to Inspector Julianna Nedd for review. *Id.* at ¶ 45. Nedd concurred with the rating and advised Plaintiff that the decision was now final. *Id.* at ¶ 46. In

[5] Defendant's Statement of Undisputed Facts actually dates the FFDE as December 12, 2006, which appears to be a typographical error.

[6] It is not clear from the record who the supervisor was, but it appears to have been Whittington.

response, Plaintiff contacted Nedd on March 6, 2006, and alleged that Brooks had forced Whittington to give Plaintiff the rating. *Id*. at ¶ 47. Plaintiff further alleged that Brooks had not given Nedd all of the documents Plaintiff had provided on appeal. *Id*. Nedd informed Plaintiff that she would be in Memphis on March 8 and would address the situation with Brooks. *Id*. at ¶ 48. According to Plaintiff, Nedd also promised to meet with Plaintiff while in Memphis but did not set an appointment for such a meeting. *Id*. at ¶ 49. While Plaintiff claims that Brooks had taken the missing documents from Plaintiff and torn them up, Defendant contends that Plaintiff simply failed to provide Nedd with the documents. Johnson Aff. ¶ 33; Def.'s Statement of Undisputed Facts ¶ 50. On March 7, 2006, Brooks overheard Plaintiff tell Whittington, "I have my rights, and she cannot do that to me and I am just not going to take it anymore." *Id*. at ¶ 51. When Plaintiff realized that Brooks was standing behind her, Plaintiff walked away but appeared to be angry or upset. *Id*. at ¶ 52. Whittington confirmed with Brooks what had been said and Brooks viewed the remarks as threats. *Id*. at ¶ 53. When Nedd visited the Memphis office on March 8, 2006, Defendant states that Plaintiff followed Nedd, waited for her in the lobby at the end of the day, and was again waiting for Nedd when she returned to the building the following morning, all of which Plaintiff denies. *Id*. at ¶¶ 54-57.

On March 9, 2006, Brooks summoned Plaintiff to a conference room for a meeting with Brooks, Hamadeh, and Whittington, all of whom had supervisory duties over Plaintiff. *Id*. at ¶¶ 58-59. Brooks denied Plaintiff's request for representation at the meeting. *Id*. at ¶ 60. Brooks brought up the subject of Plaintiff's evaluation. *Id*. at ¶ 61. According to Plaintiff, Brooks spoke loudly, made facial expressions, and struck the desk during the meeting. *Id*. at ¶ 62. Brooks informed Plaintiff that Whittington had repeated to her the comments Plaintiff made about

Brooks's hair. *Id*. at ¶ 63. Plaintiff did not respond to any of the statements or questions made during the meeting. *Id*. at ¶¶ 64-65. Hamadeh criticized Plaintiff for causing problems and frowning. *Id*. at ¶ 68. At one point, Plaintiff stated, "I don't know what God you serve. We all serve the same God. I don't know what God you all serve, but we all serve the same God." *Id*. at ¶ 69. When Plaintiff stood from the table, she asked Brooks why they could not get along out of "sisterly love" and told Brooks she wanted to embrace her. *Id*. at ¶ 70. Plaintiff raised her voice when she addressed Brooks, and Brooks responded by raising her voice and telling Plaintiff to leave. *Id*. at ¶¶ 71-73.

The next day on March 10, 2006, Postal Inspector Valerie Clay ("Clay") and another postal inspector approached Plaintiff and told her that she was to come with them. *Id*. at ¶ 74. Clay escorted Plaintiff to a conference room and began to question her. *Id*. at ¶ 75. Plaintiff refused to answer Clay's questions and invoked the Fifth Amendment. *Id*. at ¶ 76. Clay informed Plaintiff that she was being placed on administrative leave for misconduct. *Id*. at ¶ 77. A letter was also addressed to Plaintiff, notifying her that she was being placed on administrative leave effective immediately in non-duty status with pay. *Id*. at ¶ 78. Plaintiff continued to receive her normal salary for the period of her leave. *Id*. at ¶ 79. Subsequently, Plaintiff filed an EEO complaint with the Defendant's EEO Office under case number 6H-000-0003-06 on May 18, 2006, alleging discrimination based on race and retaliation. *Id*. at ¶ 38.

Plaintiff's third count of retaliation arises from the posting of Security Clearance Specialist EAS-15 positions for which Plaintiff was not given the opportunity to apply. *Id*. at ¶ 80. While Plaintiff was on the administrative leave stemming from the March 9, 2006 incident described above, a vacancy announcement advertising three vacant positions of Security

Clearance Specialist EAS-15, were posted. *Id*. at ¶¶ 82-83. The announcement was issued on July 13, 2006, and closed on July 21, 2006. *Id*. at ¶ 81. Plaintiff did not learn of the posted vacancies until August 9, 2006, after they had closed. *Id*. at ¶ 85; Def. Mot. Summ. J., ex. 25. Plaintiff alleges that Defendant failed to notify her about the openings in retaliation for prior EEO activity. Def.'s Statement of Undisputed Facts ¶ 86. The parties dispute whether Brooks was aware that Plaintiff was interested generally in training and advancement opportunities. *Id*. at ¶ 85; Johnson Aff. ¶ 49. There is nothing in the record to show that Plaintiff was specifically interested in the EAS-15 positions. Brooks was not aware of any policy, procedure, or protocol for informing employees on administrative leave of vacant positions. Def.'s Statement of Undisputed Facts ¶ 88. While Defendant contends that Plaintiff was not prohibited from applying for openings during her administrative leave, Plaintiff argues that she was barred from accessing the premises during her leave and that she did not know how to access job opportunities by computer. *Id*. at ¶ 89; Johnson Aff. ¶¶ 50-51. Defendant states that employees could access job vacancies through the postal service intranet. Def.'s Statement of Undisputed Facts ¶ 90. Plaintiff further contends that vacancy announcements were only available on Defendant's intranet system and could not be accessed from a non-postal service computer. Moresi Depo. 31-33. Brooks was not the selecting official for the vacancies. Def.'s Statement of Undisputed Facts ¶ 91.

Defendant has raised three different arguments in its Motion for Summary Judgment. First, Defendant argues that Plaintiff's claim pursuant to 42 U.S.C. § 1981a should be dismissed because Title VII is the exclusive remedy for claims of retaliation in federal sector employment. Second, Plaintiff cannot make out her *prima facie* case for retaliation because Plaintiff cannot

prove that she suffered an adverse employment action in the context of her FFDE, her placement

on administrative leave for misconduct, and her lack of opportunity to apply for vacant positions

while on leave.  Furthermore, Plaintiff cannot demonstrate a causal connection between her

protected activity and any adverse employment action.  Defendant has also offered a legitimate

nondiscriminatory reason for its actions.  Finally, Defendant contends that the Court lacks

jurisdiction over Plaintiff's claims for compensatory damages because Plaintiff has failed to

exhaust her administrative remedies as to that type of damages.

Plaintiff has responded in opposition to Defendant's Motion for Summary Judgment.

Plaintiff contends that Section 1981 (sic) does provide her with a viable cause of action for

retaliation in addition to her retaliation claim pursuant to Title VII.  As for Plaintiff's *prima facie*

case for retaliation, Plaintiff argues that she has stated a claim for retaliation resulting after her

July 13, 2005 meeting with Noonan.  Plaintiff argues that her meeting with Noonan constitutes

protected activity and that the FFDE which followed was in retaliation for her seeking Noonan's

help.  As a result of the Noonan incident, she suffered "increased hostility" from her managers,

was sent to a second FFDE, and was put on administrative leave.  Plaintiff also identifies her lost

opportunity to apply for the vacant EAS-15 positions in July 2006 as a negative employment

action.  The reasons Defendant has given for Plaintiff's FFDEs and her leave are pretext for

Defendant's retaliation.  As for the causal connection between the protected activity and the

alleged retaliation, Plaintiff states "Defendant started the hostile and adverse actions within one

month of Plaintiff seeking relief from the hostile environment."  Therefore, Plaintiff's EEO filing

in 2000 has no bearing on the causation analysis.

Plaintiff argues further that Brooks was retaliating against her for going to Noonan when

Brooks placed her on administrative leave. Plaintiff contends that a factual dispute concerning her demeanor at the March 9, 2006 meeting exists, and so there is also a dispute about whether Defendant acted reasonably by putting Plaintiff on leave. Brooks claims that Plaintiff's conduct made her fear for her own safety. Whittington, Plaintiff's immediate supervisor, reported that the meeting ended on good terms. Plaintiff further believes that she was subjected to disparate treatment by being escorted from the building by security. Concerning Plaintiff's lost opportunity to apply for open positions during her leave, Plaintiff argues that she had no access to the job postings while on leave.

Plaintiff finally argues that her demand for compensatory damages is appropriate. Plaintiff grants that her administrative charge did not request compensatory damages. Her charge was filed while Plaintiff was acting *pro se*, and the charge reserved Plaintiff's right to demand compensatory damages should Plaintiff file suit in federal court. Plaintiff argues then that her EEO complaint put Defendant on notice of her intention to seek compensatory damages in federal court and that with the assistance of counsel Plaintiff correctly included her claim in her judicial complaint.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[7]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[8]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[9]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[10]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[11]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[12]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[7] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Celotex*, 477 U.S. at 324.

[10] *Matsushita*, 475 U.S. at 586.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[12] *Id.* at 251-52 (1989).

party will bear the burden of proof at trial."[13]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[14]  Finally, the "judge may not make credibility determinations or weigh the evidence."[15]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[16]


## ANALYSIS

### I.    *Claims Under Section 1981a*

Plaintiff has alleged retaliation pursuant to Title VII as well as 42 U.S.C. § 1981a.  The Supreme Court ruled in *Brown v. General Services Administration* that Title VII provides the exclusive remedy for the employment discrimination claims of federal employees, pre-empting all other civil rights causes of action.[17]  However, *Brown* pre-dated Congress' passage of the Civil Rights Act of 1991, which is codified at 42 U.S.C. § 1981a.  Section 1981a  permits a plaintiff to recover compensatory damages for intentional acts of discrimination.  There is no authority for the proposition that *Brown* would preclude a federal employee from seeking

---

[13] *Celotex*, 477 U.S. at 322.

[14] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[15] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[16] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[17] *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 833, 96 S.Ct. 1961, 48 L. Ed. 2d 402 (1976) (distinguishing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed. 2d. 295 (1975)).

recovery pursuant to Section 1981a. On the contrary, the Sixth Circuit has permitted such claims

on several occasions since the passage of Section 1981a.[18] Therefore, as a federal employee,

Plaintiff may bring a claim pursuant to Section 1981a.


## II.     *Retaliation Claim Arising From the Fitness for Duty Examination*

The Court concludes that Defendant is entitled to summary judgment as to Plaintiff's

retaliation claim for ordering Plaintiff to undergo the FFDE. In order to make out a *prima facie*

case of retaliation, Plaintiff must demonstrate (1) that she engaged in protected conduct; (2) that

Defendant had knowledge of her protected activity; (3) that Defendant took an adverse

employment action against her; and (4) that there was a causal connection between the protected

activity and the adverse employment action.[19]

According to the Complaint, Plaintiff alleges that Defendant retaliated against

her by requiring her to submit to an FFDE after she engaged in protected activity. However,

there is some discrepancy about what constituted Plaintiff's protected activity for purposes of the

retaliation analysis. Plaintiff's Complaint states that Plaintiff's prior EEO filings were the

protected activity for which Defendant retaliated against her. Plaintiff alleges that the FFDE was

_____

[18] *E.g.*, *Hudson v. Reno*, 130 F.3d 1193 (6th Cir. 1997), *cert. denied*, 525 U.S. 822 (1998), *abrogated on other grounds*, *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).

[19] *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

ordered in retaliation for "her filing prior complaints of discrimination." Compl. ¶ 13.[20] Plaintiff also claims that Brooks' decision to place her on administrative leave was in retaliation for "her filing prior EEO complaints of discrimination and alleging a Hostile Work Environment in the SISC." *Id*. at ¶ 30. Plaintiff's Complaint alleges that she "was kept in a nonwork status and was not notified of the vacant Security Clearance Specialist, EAS-15, in retaliation for her filing prior complaints of discrimination." *Id*. at ¶ 42. At no point in the Complaint does Plaintiff even refer to her meeting with Noonan. Therefore, the Complaint clearly identifies Plaintiff's prior EEO filings as her protected activity.

On the other hand, Plaintiff's Response to the Motion for Summary Judgment focuses primarily on her meeting with Noonan as her protected activity. Plaintiff argues, "Defendant retaliated against Plaintiff for her attempts to get relief for her claims of a hostile working environment beginning on July 18, 2005 when she sought assistance from a manager outside of her department [Noonan]." Pl. Resp. 4. It was only after Plaintiff's meeting with Noonan that "her world was cast into a tumultuous struggle." *Id*. All of the events which Plaintiff has alleged were acts of retaliation are described with reference to "the **Noonan Incident**" (bold in original). It is true that at one point in her Response brief, Plaintiff argues that she had engaged in protected activity when "she was seeking relief for the hostile work environment she was currently enduring and she had previously sought EEO relief." *Id*. at 7. However, Plaintiff's brief makes it clear that her meeting with Noonan was the protected activity for which Defendant retaliated against her. In response to Defendant's contention that the prior EEO filing in 2000

---

[20] Plaintiff also states that Brooks was aware of her prior EEO filings with the postal service EEO office. Compl. ¶ 8. Plaintiff goes on to allege that Dr. Farid wrote a letter to Dr. Patterson concerning Plaintiff's prior EEO filings. *Id*. at ¶ 10.

had no causal connection to the alleged retaliation in 2005, Plaintiff argues, "Defendant attempting to demonstrate that the subject prior activity occurring in 2000 is misplaced as the above timetable demonstrates. Defendant began the adverse actions at the time of the Noonan Incident." *Id*. at 8. Thus, Plaintiff's Response clearly attempts to make the Noonan meeting the protected activity for which Plaintiff suffered the alleged retaliation and appears to contradict the allegations contained in her Complaint.

Despite Plaintiff's arguments to the contrary, only her prior EEO filings constitute protected activity which could form the basis for her retaliation claims against Defendant. First and foremost, Plaintiff's judicial Complaint and EEO filing are clear that Plaintiff's prior EEO claims were the protected activity which led Defendant to order the FFDE. Plaintiff's judicial Complaint never mentions the Noonan meeting as the protected activity giving rise to the retaliation. Although her meeting with Noonan is mentioned in Plaintiff's EEO filing, that charge states that her retaliation claim was predicated on her prior EEO filings, not her meeting with Noonan. Plaintiff's affidavit in support of her EEO charge of retaliation states, "The case number and filing date of the previous EEO complaint for which I am alleging Retaliation is Case No. HI-0059-00 filed on June 23, 2000."[21] In denying Plaintiff's administrative appeal, the EEOC also noted that Plaintiff's prior EEO filings constituted her protected activity.[22] Therefore, the Court holds that Plaintiff's prior protected activity was the filing of her EEO complaints, not her meeting with Noonan.

Having established what constituted Plaintiff's protected activity, the Court concludes

---

[21] Def.'s Mot. Summ. J., ex. 4.

[22] EEOC Appeal No. 0120072002.

that Plaintiff has failed to adduce evidence from which a reasonable juror could return a verdict in her favor as to this count. Plaintiff has failed to establish the fourth prong of her *prima facie* case, namely, that there was a causal connection between the protected activity and the adverse employment action. Plaintiff "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity.[23] In this case, Plaintiff engaged in protected activity by filing an EEOC charge in June 2000 for which Defendant allegedly retaliated against her in August 2005 when Defendant ordered Plaintiff to undergo the FFDE. Where there is no direct proof of retaliatory intent, temporal proximity together with other circumstantial evidence may establish the causal connection.[24] Not only has Plaintiff failed to produce any other evidence of retaliatory intent, Plaintiff has not explained the temporal gap between her last EEO filing in 2000 and the ordered FFDE in 2005. Instead Plaintiff has attempted to make her July 2005 meeting with Noonan the protected activity which precipitated the retaliatory conduct in August 2005 thereby showing temporal proximity. However, as the Court has already concluded, Plaintiff's protected activity forming the basis of this claim was her EEO filing, not her meeting with Noonan. In the absence of any showing of a causal connection between her prior EEO filings and the alleged retaliation, the Court holds that Plaintiff has failed to establish this element of her *prima facie* case. Therefore, Defendant is entitled to summary judgment as to this count of Plaintiff's retaliation claim.

    Even if the Court assumed that Plaintiff's meeting with Noonan was the protected

---

[23] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

[24] *Id.*

activity for which Defendant retaliated against her, Plaintiff still cannot make out her *prima facie* case. Plaintiff has failed as a matter of law to establish that her meeting with Noonan was protected activity.  Protected activity may include either participation in any proceeding under Title VII (the so-called "participation clause") or opposition to a practice declared discriminatory under Title VII (the "opposition clause").  First, to establish a claim of retaliation under the participation clause, Plaintiff must make a *prima facie* case by showing that Defendant took an adverse action against her because she filed an EEO claim.[25]  Here Plaintiff did not make a formal EEO filing with Noonan or anyone else until after the alleged retaliation had occurred. However, simply reporting her belief that she was subjected to a hostile working environment to Noonan is not protected activity for purposes of the participation clause.[26]  Therefore, Plaintiff cannot show that she engaged in protected activity by participating in a proceeding under Title VII when she met with Noonan.

Likewise, Plaintiff's meeting with Noonan does not meet the requirements for protected activity under the opposition clause.  The opposition clause makes it "unlawful ... for an employer to discriminate against any ... employe[e] ... because he has opposed any practice made ... unlawful ... by this subchapter."[27]  Under Title VII, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of

---

[25] *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 581(6th Cir. 2000).

[26] Plaintiff did file an EEO charge against Defendant on October 8, 2005, that is, *after* Defendant's alleged retaliatory conduct.  Clearly, in order for Plaintiff to state a claim for retaliation under the participation clause, the filing of his EEO charge must occur *before* the alleged retaliation.

[27] 42 U.S.C.A. § 2000e-3(a).

Title VII, the so-called opposition clause.[28]  The EEOC has identified a number of examples of "opposing" conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer, e.g., former employers, union, and co-workers.[29]  The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful."[30]  In other words, a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.[31]  The United States Supreme Court has recently abrogated the rule in this Circuit that a plaintiff is required to establish active, consistent "opposing" activities to warrant protection against retaliation.[32]  In *Crawford*, the Supreme Court held that a plaintiff may oppose an unlawful practice by simply responding to questions posed by her employer.

Applying these standards to Plaintiff's allegations, Plaintiff's meeting with Noonan does not qualify as "opposition" under Title VII.  While Plaintiff's single complaint to an individual would now meet the requirements of the opposition clause in the wake of *Crawford*, Plaintiff has

---

[28] *Johnson*, 215 F.3d at 579 -580.

[29] *Id*. (citing *EEOC Compliance Manual,* (CCH) ¶ 8006).

[30] *Id*.

[31] *Id*.

[32] *Crawford v. Metropolitan Gov't of Nashville & Davidson County, Tenn.*, 2009 WL 160424 (U.S. 2009)*, abrogating Bell v. Safety Grooving & Grinding, LP*, 107 Fed. Appx. 607, 610 (6th Cir. 2004).

failed to show that the meeting included an accusation of unlawful discriminatory conduct against Brooks. Therefore, the Noonan meeting cannot constitute "opposition" because there is no evidence that Plaintiff expressed to Noonan opposition to any specific practice which Title VII would forbid. Plaintiff has described herself as the victim of a hostile work environment. By definition, an actionable claim for hostile work environment under Title VII requires that harassment be based on sex, race, or age.[33] However, Plaintiff has alleged in only the most general terms that Brooks harassed her and created a "hostile work environment." At no time has Plaintiff ever alleged that Brooks targeted Plaintiff because of her sex, race, or age.[34] In short, there is no evidence in the record to reflect that Plaintiff complained to Noonan about unlawful discrimination on the basis of a protected characteristic.[35] Even viewing the evidence in the light most favorable to Plaintiff, Plaintiff cannot show that she engaged in protected

--------

[33] In order to make out a *prima facie* claim for hostile work environment, a plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex or race; (4) the harassment created a hostile work environment; and (5) employer liability. *Williams v. General Motors Corp.,* 187 F.3d 553, 561 (6th Cir.1999). The Sixth Circuit has also recognized a hostile work environment claim in the context of age discrimination. *Crawford v. Medina General Hospital*, 96 F.3d 830 (6th Cir. 1996).

[34] The judicial Complaint does not mention a "hostile work environment." Indeed, the Complaint focuses on Plaintiff's prior EEO filings as the protected activity giving rise to the alleged retaliation. According to Brooks's memorandum, Plaintiff made only the vaguest allegations of a hostile work environment in her meeting with Noonan. Two of Plaintiff's EEO filings which are the basis of the case before the Court allege only retaliation; the third alleges race discrimination. Def.'s Mot. Summ. J., exs. 33-35. While Plaintiff identified Brooks as the source of the hostile work environment, Plaintiff never alleges that Brooks was acting with discriminatory purpose or animus. Def.'s Mot. Summ. J., ex. 4.

[35] Plaintiff did subsequently file an EEO charge making an allegations of race discrimination. However, for the reasons discussed above, this EEO charge cannot form the basis of Plaintiff's first claim retaliation because it was filed *after* the alleged retaliatory conduct began, not before.

activity by opposing a practice declared discriminatory under Title VII when she met with Noonan. Therefore, Defendant is entitled to summary judgment as to this count of retaliation.

### III.    *Retaliation Claim Arising From Plaintiff's Administrative Leave*

With respect to Plaintiff's retaliation claim under Title VII for placing Plaintiff on administrative leave, the Court concludes that Defendant is not entitled to summary judgment. Plaintiff can make out a *prima facie* case as to this count. There remain questions of material fact as to Defendant's legitimate, nondiscriminatory reason for its decision, and Plaintiff's showing of pretext, which preclude summary judgment.

In order to make out a *prima facie* case of retaliation, Plaintiff must demonstrate the same *prima facie* elements discussed above: (1) that she engaged in protected conduct; (2) that Defendant had knowledge of her protected activity; (3) that Defendant took an adverse employment action against her; and (4) that there was a causal connection between the protected activity and the adverse employment action.[36] According to the Complaint, Plaintiff alleges that Defendant retaliated against her by placing her on administrative leave following the March 9, 2006 meeting with Brooks, Hamadeh, and Whittington. The Court finds that Plaintiff has established all of the elements of her *prima facie* case for retaliation as to this count. First, Plaintiff has established that she engaged in protected activity based on her prior EEO filings, the most recent being her October 8, 2005 claim concerning the FFDE. Second, Defendant had knowledge of the filing because Plaintiff had utilized the postal service's internal EEO procedures and made a series of allegations against Brooks. An EEO investigator addressed a

---

[36] *White*, 548 U.S. at 53.

letter to Brooks on November 30, 2005, which gave her notice that Plaintiff had named Brooks in her October 2005 complaint.[37]

Third, placing Plaintiff on administrative leave was an adverse employment action. "A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[38] Although Plaintiff has not argued that the leave resulted in demotion, loss of pay, loss of any benefits, or a reduction in job responsibilities, the Sixth Circuit has described the "dissuade a reasonable worker" standard as a "relatively low bar" and found that placing an employee on administrative leave can constitute an adverse employment action.[39] Thus, Plaintiff has satisfied this element.

Finally, Plaintiff has established a causal connection between her protected activity and the adverse action. Plaintiff "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity.[40] The administrative leave came six months after Plaintiff's EEO filing in which Plaintiff named Brooks as the source of harassment. Plaintiff stated in her investigative

_____

[37] Def. Mot. Summ. J., ex. 8.

[38] *Michael v. Caterpillar Financial Services Corp.*,496 F.3d 584, 596 (6th Cir. 2007) (citing *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

[39] *Michael*, 496 F.3d at 596. While Plaintiff's EEO filing focuses on the administrative leave, it is also true that Defendant had given Plaintiff a rating on her pay for performance review with which Plaintiff did not agree. *See Halfacre v. Home Depot, USA, Inc.*, 221 Fed. Appx. 424, 432 (6th Cir. 2007) (remanding in light of *Burlington* for reconsideration of retaliation claim for poor performance review). The record shows that Plaintiff's attempts to obtain review of that rating in part precipitated her March 9, 2006 meeting with her supervisors and the subsequent administrative leave.

[40] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

affidavit, "I believe Lewistine Brooks instructed me to report for a mandatory psychiatric examination because I wrote a letter to many Postal officials telling of the hostile work environment I am subjected to in the SISC. I allege that Lewistine Brooks is the individual creating this work environment and perpetuates this environment among employees under her supervision."[41] In addition to the temporal proximity, Plaintiff has averred that Brooks informed her that the appeal of her performance review would "never get to its destination if I have anything to do with it. Watch me."[42] Plaintiff states that Brooks took some of the documents attached to Plaintiff's appeal of the performance review, ripped them in half, and said, "These will never get there."[43] Therefore, Plaintiff has adduced sufficient evidence to establish the requisite causal connection as to this count.

Once a plaintiff has established a *prima facie* case of retaliation, thereby creating a presumption that the defendant has unlawfully discriminated against the plaintiff, the burden of production, but not the burden of persuasion, shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.[44] Only if the defendant meets this obligation does the burden shift back to the plaintiff to "then prove that the proffered reason was actually a pretext to hide unlawful discrimination."[45] Defendant has argued that it legitimately placed Plaintiff on administrative leave due to Plaintiff's job-related behavior and demeanor. Brooks had become

---

[41] Def.'s Mot. Summ. J., ex. 4.

[42] Johnson Aff. ¶ 30.

[43] *Id*. at ¶ 33.

[44] *Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).

[45] *Id*.

concerned that Plaintiff was disrespectful and argumentative and that Plaintiff posed a risk of harm to Brooks and others in the workplace. According to Defendant, the March 9, 2006 meeting with Plaintiff and her supervisors was convened to address Plaintiff's statement to Whittington that she was "not going to take" Brooks' treatment any more. The meeting also covered other recent incidents including Plaintiff's behavior during Nedd's visit to the SISC facility the day before. Based on those events as well as Plaintiff's behavior during the meeting, Brooks determined that Plaintiff was a risk and should be placed on administrative leave. Therefore, Defendant has met its burden of production to offer a legitimate, non-discriminatory reason for placing Plaintiff on administrative leave.

The burden now shifts back to Plaintiff to demonstrate that Defendant's proffered legitimate reasons are pretext for retaliation. Plaintiff must introduce evidence to create a genuine issue of material fact that (1) the defendant's stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain the defendant's actions.[46] The Court holds that questions of material fact exist as to Defendant's proffered legitimate, nondiscriminatory reason for placing Plaintiff on administrative leave, making summary judgment on this claim inappropriate. First, the parties dispute whether Brooks could reasonably view as a threat Plaintiff's statement to Whittington that she was "not going to take" Brooks' treatment any longer. Brooks contends that she construed the statement as a threat of physical harm against her. Whittington, the person to whom Plaintiff actually made her "not going to take it" comment, interpreted the comment to refer to filing an EEO charge, not a threat

---

[46] *Johnson,* 215 F.3d at 573.

of violence against Brooks.[47]  Second, the parties dispute whether Plaintiff followed Nedd around the office during her visit and waited for Nedd in the lobby on two occasions, once at the end of the day on March 8 and again on the morning of  March 9.  Third, the parties dispute whether Plaintiff moved toward Brooks in a threatening manner during the meeting.  At one point Plaintiff asked Brooks why they could not get along "out of sisterly love" and told Brooks that she wanted to embrace her.[48]  Brooks has averred that Plaintiff moved toward her presumably to embrace her; whereas, Plaintiff has stated that she was simply standing to leave the room.  Plaintiff argues that a reasonable person would not have viewed Plaintiff's conduct, and in particular her statements about "not taking it" and about embracing Brooks, as threats.  Sufficient factual issues exist about whether Plaintiff actually posed a risk of physical harm to Brooks or anyone in her office, thus creating a jury question as to whether Defendant placed Plaintiff on administrative leave legitimately or as pretext to hide Defendant's unlawful retaliation against Plaintiff.  Therefore, the Court concludes that Plaintiff has introduced evidence to create a genuine issue of material fact that Defendant's stated reasons had no basis in fact and the stated reasons were insufficient to explain Defendant's actions.

Having found that Plaintiff could make out a *prima facie* case as to her claim of retaliation for being placed on leave and that Defendant has proffered a legitimate, nondiscriminatory reason for its actions, the Court concludes that questions of fact as to whether Defendant's reasons were pretextual remain.  Therefore, Defendant's Motion for Summary

---

[47] Whittington Depo. 50:10-16; 52:10-13, April 3, 2008.

[48] The parties dispute whether Plaintiff ever approached Brooks for the purpose of embracing her.

Judgment is denied as to this count.


IV.     *Retaliation Claim Arising From Plaintiff's Lost Opportunity to Apply for EAS-15 Positions*

Plaintiff's final count of retaliation is based on the fact that Defendant posted job vacancies while Plaintiff was on administrative leave.  Plaintiff alleges that she was denied the opportunity to apply for a position in retaliation for her filing EEO charges.  The Court holds that Plaintiff has failed to establish all of the elements of her *prima facie* case as to this count.  The Court finds that Plaintiff has established the first two elements of this claim: that she engaged in protected activity based on her prior EEO filing on May 18, 2006, and that Defendant had knowledge of the filing.  While it is not clear to the Court that Plaintiff can prove the third element, that is, that she suffered an adverse employment action, it is not necessary for the Court to reach this issue.[49]  Plaintiff has failed to "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity.[50]  Plaintiff had filed her most recent EEO charge on May 18, 2006.  The job vacancies were posted on July 13, 2006, and closed on July 21, 2006.  Plaintiff learned of the vacancies on August 9, 2006.  Thus, there was a temporal gap of less than three months between Plaintiff's protected activity and the alleged adverse action.  However, Plaintiff must produce evidence in addition to temporal proximity to prove the causal connection.

---

[49] In light of the "dissuade a reasonable worker" standard's "relatively low bar," it is possible that Defendant's failure to give notice of job vacancies to an employee who was already on administrative leave would be adverse.

[50] *Nguyen*, 229 F.3d at 563.

Even viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to establish the causal connection element. It does appear that, contrary to Defendant's assertions, Plaintiff did not have access to the workplace during her leave and consequently did not have access to internal job postings via the postal service intranet. As for the rest of Plaintiff's allegations that would go to demonstrate a causal connection, Plaintiff has produced no evidence to support an inference that the job postings were causally related to her protected activity. There is no evidence in the record that Plaintiff had asked to be informed of job postings or that Plaintiff expected to be contacted about job vacancies while on leave.[51] Plaintiff has not asserted that Defendant had a duty to inform her of possible job vacancies while she was on leave. Plaintiff has alleged that she requested that the Transition Coordinator of Defendant's national realignment notify her of all vacant positions while on leave.[52] However, there is no evidence in the record to support this claim. Plaintiff further alleges that although Dr. Patterson, the psychiatrist who conducted her FFDE, had cleared her to return to work, Brooks kept her on leave while the EAS-15 positions were open. *Id*. at ¶ 38. However, it is undisputed that Plaintiff remained on leave until November 2006, more than three months after the postings closed. According to Brooks, human resources made the determination about when Plaintiff could return to work, and Brooks was unaware of what date a physician cleared Plaintiff to return.[53] Plaintiff also alleges that Brooks, Dixon, and Dr. Farid contacted Dr. Patterson in order to persuade him to change his findings that Plaintiff was fit for duty. Compl. ¶ 40. Again there

---

[51] Johnson Depo. 341:15-345:3, Sept. 24, 2008.

[52] Compl. ¶ 35.

[53] Def.'s Mot. Summ. J., ex. 26, 2.

is no evidence in the record of such an attempt.  As a result, Plaintiff has presented insufficient evidence from which a reasonable juror could find a causal connection between her protected activity and any adverse action.  Therefore, Defendant is entitled to summary judgment as to this count.

**V.      *Compensatory Damages***

Finally, Defendant argues that Plaintiff is not entitled to compensatory damages because Plaintiff has failed to exhaust her administrative remedies as to that form of relief.  The Court agrees and holds that Defendant is entitled to summary judgment as to Plaintiff's claim for compensatory damages.  Section 1981a  permits the recovery of compensatory damages for intentional acts of discrimination.[54]  That section defines compensatory damages as "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."[55]  It is settled that a federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action.[56]  Likewise, compensatory damages can be awarded at the administrative level of employment proceedings.[57]  As a result, a plaintiff must exhaust her administrative remedies with respect to compensatory damages as with any other claim for relief.[58]

---

[54] 42 U.S.C. § 1981a(1).

[55] 42 U.S.C. § 1981a(b)(3).

[56] *Brown*, 425 U.S. at 832-33.

[57] *West v. Gibson*, 527 U.S. 212, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999); *see also Crawford v. Babbitt*, 186 F.3d 1322 (11th Cir. 1999).

[58] *West*, 527 U.S. at 216-17.

In this case Plaintiff has failed to exhaust her administrative remedies as to her claims for compensatory damages. None of Plaintiff's EEO charges included a claim for compensatory damages. Plaintiff's third and final EEO charge did request to "be made whole to August 2, 2006."[59] However, the charge does not specifically mention compensatory damages. Plaintiff subsequently provided an investigative affidavit in which she stated, "Presently I am claiming only actual damages. If I am required to take this matter into federal district court I may claim compensatory damages at that time."[60] It is clear then that Plaintiff did not submit her claim for compensatory damages during administrative proceedings and consequently failed to exhaust such a claim.

Plaintiff argues that her administrative claims were filed without the assistance of counsel and without the knowledge that she had to exhaust her administrative remedies as to her compensatory damages. Thus, the Court should liberally construe the EEO charges to read into them a claim for compensatory damages. Plaintiff states that she "with guidance of counsel, added her complete request for damages in her complaint to include compensatory damages, correcting the Plaintiff's request for damages in her administrative complaints." However, this contention is unfounded. Plaintiff filed her judicial complaint in which she is seeking compensatory damages *pro se*, some four months before her attorney filed a notice of appearance in this case. Plaintiff cannot now argue that she inadvertently omitted her claims for compensatory damages during the administrative proceedings because she was *pro se* but corrected her oversight with the assistance of counsel when she prepared her judicial complaint.

---

[59] Def.'s Mot. Summ. J., ex. 35.

[60] Def.'s Mot. Summ. J., ex. 25.

It is clear that Plaintiff knowingly omitted her claim for compensatory damages in her administrative filings and then attempted to add that claim to her judicial complaint without having first exhausted her administrative remedies. Therefore, Defendant is entitled to summary judgment as to Plaintiff's claim for compensatory damages.

<u>**CONCLUSION**</u>

Defendant is entitled to summary judgment as to Plaintiff's first and third claims of retaliation. With respect to the first claim, that Defendant retaliated against Plaintiff by ordering her to undergo a FFDE, the Court holds that Plaintiff has failed to demonstrate that there was a causal connection between her EEO filing in 2000 and the decision to order the FFDE in 2005. As for the third claim, that Defendant retaliated against her by denying her the opportunity to apply for an EAS-15 position while she was on leave, Plaintiff has also failed to demonstrate that there was a causal connection between her EEO activity and Defendant's failure to notify her of the vacant positions. The Court further grants Defendant summary judgment as to Plaintiff's claim for compensatory damages.

However, Defendant is not entitled to summary judgment as to Plaintiff's second count of retaliation, that Defendant retaliated against her by placing her on administrative leave. Questions of fact exist about Defendant's determination that Plaintiff posed a risk to Brooks and her co-workers. Therefore, Defendant's Motion for Summary Judgment is **GRANTED IN PART, and DENIED IN PART**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON

UNITED STATES DISTRICT JUDGE

Date: February 12th, 2009.