# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| DIANE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 07-2665-STA |
| | ) |
| JOHN E. POTTER, | ) |
| in his official capacity as | ) |
| Postmaster General, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In this case Plaintiff Diane Johnson, an employee of the United States Postal Inspection Service, claims that her employer John E. Potter, the Postmaster General of the United States, retaliated against her in violation of Title VII of the Civil Rights Act of 1965. Plaintiff alleges that she was placed on administrative leave with pay for eight (8) months in retaliation for filing an EEO complaint against her supervisor, Lewistine Brooks ("Brooks"). The Court tried this civil action without a jury beginning on April 27, 2009. Following the trial, the parties filed proposed findings of fact and conclusions of law. Federal Rule of Civil Procedure 52 requires that, "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately."[1] In accordance with the Rule, the Court finds and states the following:

---

[1] Fed. R. Civ. P. 52(a)(1).

**FINDINGS OF FACT**

Plaintiff Diane Johnson ("Plaintiff") is an EAS-11, Inspection Service Operations Technician, at the Security Investigations Service Center ("SISC") in Memphis, Tennessee. She has been employed by the United States Postal Service as an EAS-11 since 1981. Lewistine Brooks ("Brooks"), SISC Manager, has been her manager for fourteen to fifteen (14 -15) years.

On August 16, 2005, Brooks handed Plaintiff a shell letter notifying Plaintiff to submit to a mandatory fitness for duty examination ("FFDE") on August 25, 2005. The letter advised Plaintiff that the Inspection Service had become aware that she might be experiencing a psychological disorder which could adversely affect her ability to perform her duties in a safe and competent manner. Plaintiff's initial appointment for an FFDE was cancelled because the Plaintiff was out on leave protected under the Family Medical Leave Act ("FMLA") from August 2005 to November 1, 2005. Upon Plaintiff's return from FMLA leave, Dr. Michael Patterson conducted the FFDE in mid-December 2005. Based on Defendant's decision to order her to undergo the FFDE, Plaintiff filed an EEO complaint dated October 8, 2005 with the Defendant's EEO Office under case number 66-000-0056-05 alleging retaliation. It is undisputed that this EEO filing qualifies as Plaintiff's underlying protected activity which forms the basis of her retaliation claim against Defendant.

On or about March 7, 2006, Brooks overheard Plaintiff stating to Marsha Whittington ("Whittington"), Plaintiff's immediate supervisor, "I have my rights, and she cannot do that to me and I am just not going to take it any more." Whittington confirmed to Brooks that Plaintiff was speaking about Brooks, so Brooks wanted to speak with Plaintiff to have Plaintiff clarify her remarks because Brooks viewed them as threats. Brooks perceived Diane Johnson's comment:

2

"[she] not going to take it any more," as threatening and vindictive. Whittington believed that Plaintiff was referring to filing more EEO complaints against Brooks and not actual violence against Brooks. Additionally, Brooks was concerned about other recent behavior Plaintiff had exhibited. For example, Marvel Hamadeh ("Hamadeh"), another supervisor at SISC, discussed with Brooks her observations that Plaintiff had appeared to follow Inspector Julianna Nedd ("Nedd") during Nedd's visit to SISC.[2] It was also reported to Brooks that Plaintiff had made remarks to other SISC employees about buying hair care products for Brooks and about Brooks picking up Nedd at the airport when she visited Memphis and hosting Nedd at her home.

      On March 9, 2006, a meeting was conducted with Plaintiff, Brooks, Hamadeh, and Whittington in the SISC conference room to discuss Plaintiff's recent behavior which Brooks viewed as threatening and inappropriate. During the course of the meeting, Brooks attempted to question Plaintiff about a series of episodes including the "not going to take it" comment as well as other remarks employees had reported to Brooks and attributed to Plaintiff which were concerned with Brooks personal life. Plaintiff at first refused to respond, later talked over Brooks, and even raised her voice. At points during the meeting, Whittington asked Plaintiff to lower her voice, calm down and be mindful that others could hear her outside the conference room. Plaintiff responded that she did not care who overheard her. During the meeting, Plaintiff stated "I don't know what God you serve. We all serve the same God. I don't know what God you-all serve, but we all serve the same God." Hamadeh interpreted this comment as a reference

---

    [2] Plaintiff testified that she had hoped to speak with Nedd about her January 2006 pay for performance score and a possible appeal of that score. Plaintiff learned that her initial score along with the scores of all Memphis SISC employees were lowered one step to comply with Postal Service policy concerning the average of all scores. Brooks herself received the same score as Plaintiff.

to her Muslim faith and was offended.  Finally, Plaintiff attempted to give Brooks an unsolicited embrace, which Brooks declined.  At that point Plaintiff left the conference room and the meeting was over.  At Brooks' request, Whittington typed a report to memorialize what had happened during the meeting.

The tenor of the March 9, 2006 meeting was corroborated by other SISC employees who overheard some of the exchanges.  Marshell Tabron-Barnes ("Barnes") and Deborah Johnson ("Johnson") sat at cubicles located outside of the SISC conference room at the time of the meeting.  Barnes and Johnson heard Plaintiff's raised voice through the closed conference room door and could tell that she was upset.  Another SISC employee Kandi Robinson testified that "a lot of times [Plaintiff] would cry or be visibly shaken" at work and that while she was not fearful of Plaintiff, she could understand why others might be.

Brooks perceived Plaintiff's statements and behavior at the March 9, 2006 meeting as personally threatening and otherwise conduct unbecoming a postal employee.  It was also true that Defendant had not received the results of Plaintiff's FFDE as of March 2006.  As a result, Brooks conferred with and received approval from Nedd, her immediate supervisor, to place Plaintiff on administrative leave effective March 10, 2006, the day after the meeting.  On March 10, 2006, Postal Inspectors Valerie Clay and Susan Link ("the inspectors") were called to SISC.  The inspectors questioned Plaintiff about the March 9 meeting.  By letter dated March 10, 2006, Plaintiff was notified that she was being placed on administrative leave in a non-duty status with pay.  After Plaintiff was informed that she was being placed on administrative leave, the inspectors escorted her to her vehicle.  Inspector Link testified that after being called to investigate a disturbance, it is common for Postal Inspectors to escort an employee from a

building for security reasons, i.e., to "make sure that they are outside the building so that they cannot cause any problems."

Plaintiff was in non-duty status with pay and was paid her normal salary during the time she was on administrative leave. This was standard Postal Service policy to ensure that an employee on leave suffered no financial harm while an investigation is being done or while the fitness for duty examination is being conducted. However, the results of Dr. Patterson's FFDE were not available for some time. Dr. Patterson did not provide his report on Plaintiff's FFDE until July 11, 2006, and then only after numerous attempts were made to reach him by letter and telephone. At various times in 2006, additional psychological testing and examinations were conducted. In all Plaintiff's administrative leave lasted for eight months in 2006. At one time Plaintiff resorted to help from her Congressman and the NAACP in an effort to obtain her reinstatement. Brooks had no involvement with Plaintiff's administrative leave lasting for eight months in 2006. After a Postal Service physician reviewed the FFDE report, Plaintiff was authorized to return to work on November 1, 2006.

## **CONCLUSIONS OF LAW**

Plaintiff's claim for retaliation is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. Therefore, jurisdiction is proper in this Court.

In order to make out a *prima facie* case of retaliation, Plaintiff must demonstrate the following *prima facie* elements by a preponderance of the evidence: (1) that she engaged in protected conduct; (2) that Defendant had knowledge of her protected activity; (3) that Defendant took an adverse employment action against her; and (4) that there was a causal

5

connection between the protected activity and the adverse employment action.[3]  Based upon the trial testimony, the Court finds that Plaintiff has failed to establish all of the elements of her *prima facie* case for retaliation, and so the Court finds for Defendant in this matter.

The first two elements in this case are not in dispute.  First, Plaintiff engaged in protected activity based on her prior EEO filing concerning the FFDE and dated October 8, 2005.  Second, Defendant had knowledge of the filing because Plaintiff had utilized the postal service's internal EEO procedures and made a series of allegations against Brooks.

Third, the Court holds that placing Plaintiff on administrative leave for eight months was an adverse employment action.  "A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[4] Plaintiff argues that during her extended leave, pay for peformance reviews were completed which would have entitled her to a raise at the end of 2006.  Because Plaintiff did not receive an evaluation, Plaintiff was denied a raise for that year.  Therefore, the leave arguably resulted in a loss of pay.  Nevertheless, the Sixth Circuit has described the "dissuade a reasonable worker" standard as a "relatively low bar" and found that placing an employee on administrative leave can constitute an adverse employment action.[5]

---

[3] *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

[4] *Michael v. Caterpillar Financial Services Corp.*,496 F.3d 584, 596 (6th Cir. 2007) (citing *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

[5] *Michael*, 496 F.3d at 596.  While Plaintiff's EEO filing focuses on the administrative leave, it is also true that Defendant had given Plaintiff a rating on her pay for performance review with which Plaintiff did not agree.  *See Halfacre v. Home Depot, USA, Inc.*, 221 Fed. Appx. 424, 432 (6th Cir. 2007) (remanding in light of *Burlington* for reconsideration of retaliation claim for poor performance review).  The Court has found that Plaintiff's attempts to obtain review of that rating in part precipitated her March 9, 2006 meeting with her supervisors

Defendant contends that Plaintiff's leave was not an adverse action because Plaintiff continued to receive her full salary and benefits for the entire eight-month period. It is true that the Sixth Circuit has held that "a suspension with pay and full benefits pending a timely investigation into suspected wrong doing is not an adverse employment action."[6] However, in this case Plaintiff was on administrative leave from March 10, 2006 until November 1, 2006, without any information on her return to work for almost eight months. The Court finds that under any definition eight months could not be considered a "timely investigation." The facts presented in this case are therefore distinguishable from those in other Sixth Circuit cases where paid leave was found not to be an adverse action.[7] Thus, the Court holds that being placed on indefinite administrative leave which ultimately lasted for almost eight months is a materially adverse employment action and might dissuade a reasonable worker from making a charge of discrimination.

Turning to the fourth element of Plaintiff's *prima facie* case, the Court finds that Plaintiff has failed to show a causal connection between her protected activity and the adverse action. Plaintiff had to "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity.[8]

and the subsequent administrative leave.

[6] *White v. Burlington Northern & Santa Fe Railway Co.*, 364 F.3d 789, 803 (6th Cir. 2004) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 752 (6th Cir. 1999)).

[7] *See Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341 (6th Cir. 2007) (executive employee suspended with pay one month); *Peltier v. United States*, 388 F.3d 984 (6th Cir. 2004) (ATF agent suspended with pay no more than five months pending criminal investigation); *Jackson v. City of Columbus*, 194 F.3d 737, 752 (6th Cir. 1999) (chief of police suspended with pay for four days).

[8] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

"Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."[9] Where there is no direct proof of retaliatory intent, temporal proximity together with other circumstantial evidence may establish the causal connection.[10] In this case Plaintiff's administrative leave came six months after Plaintiff's EEO filing in which Plaintiff named Brooks as the source of harassment.[11]

As an initial matter, the Court found on summary judgment that Plaintiff had adduced sufficient evidence to survive summary judgment as to the causation issue.[12] At that stage, Plaintiff provided an affidavit in which she averred that Brooks informed her that the appeal of her performance review would "never get to its destination if I have anything to do with it. Watch me." Plaintiff also stated that Brooks took some of the documents attached to Plaintiff's appeal of the performance review, ripped them in half, and said, "These will never get there." However, at trial Plaintiff simply testified that Brooks received Plaintiff's narrative in support of her appeal of the performance review and told Plaintiff that she "wouldn't dare give nothing like

---

[9] *Id.*

[10] *Id.*

[11] Plaintiff stated in her investigative affidavit, "I believe Lewistine Brooks instructed me to report for a mandatory psychiatric examination because I wrote a letter to many Postal officials telling of the hostile work environment I am subjected to in the SISC. I allege that Lewistine Brooks is the individual creating this work environment and perpetuates this environment among employees under her supervision."

[12] *See* Order Granting in Part, Denying in Part Defendant's Motion for Summary Judgment, Feb. 12, 2009.

this to my boss."[13] Plaintiff never testified that Brooks tore up the appeal documents. On the other hand, Brooks testified that she did not remove any documents from the appeal and never tore them up.[14] Unlike the standard of review on summary judgment, the Court must act as the finder of fact and resolve questions of fact raised by conflicting testimony. Based upon the witnesses and their testimony, the Court finds Brooks's testimony more credible and therefore finds that Brooks never removed documents from Plaintiff's appeal or tore them as Plaintiff testified. Having resolved this issue of fact in favor of Defendant, Plaintiff had the burden to present other evidence that Brooks treated her differently or singled her out after the filing of Plaintiff's EEO complaint.

The Court finds that Plaintiff has failed to meet this burden and proffered no other credible evidence to show that there was a causal connection between her protected activity and the decision to place her on administrative leave. More specifically, Plaintiff has failed to show that she would not have been placed on leave had she not filed her EEO complaint back in October 2005. In this case it cannot be said that Plaintiff was being singled out for retaliation when management placed her on leave. First, at the time of the decision, concerns about her emotional state had already arisen in 2005, and Plaintiff had undergone an FFDE, the results of which were still pending. What is more the FFDE had been ordered prior to Plaintiff's October 2005 EEO filing. Second, Brooks had received reports from other employees at SISC concerning Plaintiff's unusual and unprofessional workplace behavior including Plaintiff's attempts to meet Nedd, the "not going to take it anymore" reference to Brooks, and other

---

[13] Trial Transcript, Apr. 29, 2009, 384:3-5.

[14] Trial Transcript, Apr. 27, 2009, 59:4-7.

comments concerning Brooks' personal life. These reports precipitated the March 9 meeting which was convened to address Plaintiff's conduct. Most importantly, Plaintiff displayed an unprofessional demeanor during the March 9 meeting by raising her voice to her supervisors and making inappropriate remarks. Plaintiff raised her voice when addressing Brooks and refused to lower it even after Whittington cautioned her that she was speaking so loudly that other employees would hear her. Whatever her intentions, Plaintiff's remark about "serving God" offended Hamadeh and taken together with her offer to embrace Brooks was inappropriate for the workplace. Under the circumstances, management would have been justified in placing any similarly situated employee on administrative leave. For her part, Plaintiff has proffered no evidence of similarly situated employees receiving some less drastic form of discipline under similar circumstances.[15] Therefore, Plaintiff has failed to prove that she was being singled out when Brooks made the decision in consultation with her manager to place Plaintiff on administrative leave.

It should be further noted that Brooks, the person named in Plaintiff's EEO complaint, did have a significant role in events leading up to Plaintiff's leave. Brooks called the March 9 meeting, and more than one allegation discussed at the meeting concerned Brooks. Brooks was also the manager who felt that leave was necessary following the meeting. However, the Court finds no evidence that Brooks was treating Plaintiff differently than she would have a similarly

---

[15] Plaintiff did call Susan Moresi, a USPS employee who had been placed on leave. However, Moresi testified that she was not an employee at Memphis SISC and had never worked for Brooks or Nedd. Therefore, the Court finds that Moresi is not a similarly situated employee. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (quoting *Ruth v. Children's Med. Cent.*, 940 F.2d 662, 1991 WL 151158, at *6 (6th Cir. Aug. 8, 1991) (unpublished)).

situated employee. Brooks called the March 9 meeting to address multiple reports she received about Plaintiff's behavior from other individuals. The reports were independent and did not originate with Brooks herself. For example, Hamadeh, and not Brooks, observed Plaintiff in her apparent attempts to speak with Nedd during her visit at SISC. Whittington confirmed to Brooks that Plaintiff had made her "not going to take it" comment with reference to Brooks. Thus, the Court finds that Brooks had independent information upon which she relied in calling the meeting.[16] Furthermore, as SISC manager, Brooks was more than justified in meeting to address reports she had received about the behavior of a subordinate employee, particularly where the employee was making remarks about Brooks to other employees. In light of Plaintiff's "not going to take it" comment, it was likewise appropriate for Brooks to give Plaintiff an opportunity to discuss Plaintiff's possible problems with Brooks and attempt to resolve those issues.

Plaintiff has repeatedly argued that Brooks had no reason to believe that Plaintiff posed a threat of violence in the workplace and so placing Plaintiff on leave was a pretext for retaliation. However, before the Court reaches that issue, Plaintiff must first establish causation, namely, that she would not have been placed on leave but for her EEO filing. As previously discussed, however, leave was justified after Plaintiff's emotional and somewhat bizarre behavior during the meeting. Even when Brooks felt that leave was appropriate, the decision to place Plaintiff on leave was not hers unilaterally. Brooks had consulted Nedd who agreed that leave was warranted under the circumstances. Absent some showing that Brooks treated another similarly situated employee differently under similar circumstances, Plaintiff has proffered no evidence

---

[16] Had Brooks been the only witness to Plaintiff's behavior, there might be reason to suspect that Brooks used these examples of Plaintiff's conduct as pretext for the meeting in an effort to single Plaintiff out. This was not the proof at trial.

that she would not have been placed on leave or that Brooks singled her out in any way after the filing of her EEO charge.  Other than temporal proximity, Plaintiff has failed to demonstrate a causal connection between her EEO complaint and the decision to place her on administrative leave.

Having failed to establish a causal connection between her protected activity and management's decision to place her on administrative leave, Plaintiff has failed to establish her case for retaliation.  For this reason, the Court finds in favor of Defendant.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 9th, 2009.